IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00797-NRN

ALEJANDRO MARTINEZ,

Plaintiff,

v.

ADAMS COUNTY SHERIFF'S OFFICE and
JAMES MICHAEL COOK, in his individual capacity,

Defendants.

---

## ORDER ON
## DEFENDANT ADAMS COUNTY SHERIFF'S OFFICE'S
## MOTION FOR SUMMARY JUDGMENT (Dkt. #32)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the me pursuant to the parties' consent to the jurisdiction of a United States Magistrate Judge (Dkt. #13) and an Order of Reference entered by Chief Judge Philip A. Brimmer. Dkt. #14. Now before the Court is Defendant Adams County Sheriff's Office's ("Defendant" or "Adams County") Motion for Summary Judgment. Dkt. #32. I have carefully considered the motion, Plaintiff Alejandro Martinez's Response (Dkt. #35), and Defendant's Reply. Dkt. #36. I heard argument on the motion on June 1, 2020. *See* Dkt. #38. I have taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is hereby ORDERED that the subject motion (Dkt. #32) is GRANTED.

## I. BACKGROUND

Based on the briefing and evidence submitted, the parties agree as follows, unless noted. Where a dispute exists, the I construe the facts most favorable to Mr. Martinez, the nonmovant.

On March 21, 2017, Brighton Police Department Officers responded to the scene of an assault where Mr. Martinez was a suspect. Not wanting to be arrested, Mr. Martinez fled the scene and officers requested back up. Law enforcement officers from the Weld County Sheriff's Office, the Firestone Police Department, and the Adams County Sheriff's Office, including Defendant Cook, an Adams County Sheriff's Deputy and K-9 handler, responded to the scene. Mr. Martinez was eventually located hiding on the roof of an outbuilding. Plaintiff was commanded by law enforcement officers, including Defendant Cook, who had climbed on the roof with his dog, to get off the roof. Mr. Martinez crouched and lit cigarette. Mr. Martinez alleges that after the dog disobeyed Defendant Cook's commands to apprehend Mr. Martinez, Defendant Cook simply kicked him off the roof. Defendant disputes the manner in which Mr. Martinez fell off the roof, but there is doubt that Mr. Martinez ended up on the ground. Mr. Martinez suffered injuries as a result of the fall.

Adams County conducted an internal affairs investigation into whether Defendant Cook violated the Sheriff's Office Professional Conduct, Adherence to Standards, Conformance to Law and Use of Force standards. The allegations were not sustained.

Mr. Martinez filed his Complaint on March 18, 2019 (Dkt. #1), in which he asserts an excessive force claim pursuant to 42 U.S.C. § 1983 against Adams County and

Defendant Cook.[1] Adams County now moves for summary judgment on its own behalf. Defendant Cook is not moving for summary judgement.

## II. LEGAL STANDARDS

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations

---

[1] Mr. Martinez later dismissed his claim against Defendant the Board of County Commissioners of the County of Adams. *See* Dkt. ##32 & 33.

3

contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). *See also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he contents of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

### III. ANALYSIS

Adams County argues that it is entitled to summary judgment on Mr. Martinez's municipal liability claim. I agree.

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (footnote omitted). To state a claim for municipal liability, a plaintiff

must plausibly allege the existence of a municipal policy or custom and a causal link between the policy or custom and the injury alleged. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015). He must also "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury. *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). A municipality can be liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *Monell*, 436 U.S. at 690-91. Thus, to prove a municipality is liable under § 1983 for the acts of one of its employees, a plaintiff must show (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Id.* at 694.

There are genuine issues of material fact whether Defendant Cook intentionally kicked Mr. Martinez off the roof, which, if true, undoubtedly would be a constitutional violation. Accordingly, the Court focuses on whether an Adams County policy or custom was the moving force behind Defendant Cook's actions.

To establish municipal liability, a plaintiff must demonstrate a "municipal policy or custom," which may take the form of

> (1) a formal regulation or policy statement, (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, (3) the decisions of employees with final policymaking authority, (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval, or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted). After establishing a municipal policy or custom, a plaintiff must demonstrate a direct causal link between the policy or custom and the injury alleged. *Id.* "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997). Finally, the plaintiff must establish that the municipal action was taken with deliberate indifference to his rights. *Id.* at 407. "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Waller v. City and Cty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quotation omitted).

Adams County contends that Mr. Martinez cannot point to any unconstitutional policy or custom that caused his injury. Instead, Defendant characterizes Mr. Martinez's allegations regarding Adams County's failure to train or supervise its officers and past instances of condoning its officers' use of force as conclusory and irrelevant.

In his Response, Mr. Martinez argues that the "practice and custom of the Adams County Sheriff's Office of allowing Deputy Cook wide latitude to make decisions in the field effectively made Deputy Cook the policy maker when it came to handling his K-9 in the field." Dkt. #35 at 7. Mr. Martinez contends that Adams County's policy of allowing its canine handlers to assist other agencies without guidance as to how they are to be supervised or assisted, even in untested situations, allowed Defendant Cook to place

6

his canine on the roof without a strategy or supervision. Mr. Martinez further claims that Adams County ratified Defendant Cook's actions when he was investigated but not disciplined for the incident. Finally, Mr. Martinez argues that instances of excessive force outlined in his complaint demonstrate that Adams County has adopted a policy of "de-escalation by escalation."

I first turn to Mr. Martinez's argument that Defendant Cook can be categorized as a "policymaker" such that his actions can be attributed to Adams County. As Mr. Martinez recognizes, a single unconstitutional incident is ordinarily insufficient for municipal liability. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). But a single incident may suffice when caused by an existing policy that "can be attributed to a municipal policymaker." *Id.* In *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), a plurality of Supreme Court justices emphasized the proposition that "the authority to make municipal policy is necessarily the authority to make *final* policy." 485 U.S. at 127 (emphasis in original; citation omitted). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Id.*

A sheriff's deputy is not a position that would generally fit the definition of "final policymaker" for purposes of municipal liability. *See Sanchez v. Melendrez*, 934 F. Supp. 2d 1325, 1341 (D.N.M. 2013) (police sergeant and lieutenant not final policymakers and collecting cases from other circuits that hold the same). As demonstrated by the subsequent internal affairs investigation, Defendant Cook was subject to Adams County policies regarding Professional Conduct, Adherence to Standards, Conformance to Law, and Use of Force. Mr. Martinez also concedes that

7

Adams County promulgated Policy 309 regarding the use of canines, which includes canine apprehension guidelines. That policy provides as follows.

> A canine may be used to locate and apprehend a suspect if the canine handler reasonably believes that the individual has either committed, is committing or threatening to commit any serious offense and if any of the following conditions exist:
>
> (a) There is a reasonable belief the suspect poses an imminent threat of violence or serious harm to the public, any deputy or the handler.
>
> (b) The suspect is physically resisting or threatening to resist arrest and the use of a canine reasonably appears to be necessary to overcome such resistance.
>
> (c) The suspect is believed to be concealed in an area where entry by other than the canine would pose a threat to the safety of deputies or the public.
>
> It is recognized that situations may arise that do not fall within the provisions set forth in this policy. Such events require consideration of the totality of the circumstances and the use of an objective reasonableness standard applied to the decision to use a canine.
>
> Absent a reasonable belief that a suspect has committed, is committing or threatening to commit a serious offense, mere flight from a pursuing deputy, without any of the above conditions, shall not serve as the basis for the use of a canine to apprehend a suspect.
>
> Use of a canine to locate and apprehend a suspect wanted for a lesser criminal offense than those identified above requires approval from the Shift Supervisor. Absent a change in circumstances that present an imminent threat to deputies, the canine or the public, such canine use should be conducted under conditions that minimize the likelihood the canine will bite or otherwise injure the individual.
>
> In all applications, once the suspect has been located and no longer reasonably appears to present a threat or risk of escape, the handler should secure the canine as soon as it becomes reasonably practicable. If the canine has apprehended the suspect with a bite, the handler will give a verbal and/or physical release command when tactically sound, reasonably prudent, and/or safe to do so.

Dkt. #35-4 at 1–2.

Adams County's policies, not Defendant Cook's discretionary decisions at the scene, are the acts of Adams County. And indeed, Defendant Cook appears to have failed to follow Adams County's rules for canine apprehension. Municipal liability cannot be imposed on these grounds. Finding otherwise would stretch the case law's definition of "final policymaker" beyond its intended reach.

To hold Adams County responsible for Defendant Cook's actions, Mr. Martinez relies on *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575 (3d Cir. 2003). In that case, an insulin-dependent diabetic detainee alleged that he suffered a stroke due to failure of prisoner medical staff to administer insulin during the first twenty-one hours of his incarceration. The court denied summary judgment on the plaintiffs' claim against the hospital itself because "[a] reasonable jury could conclude that the failure to establish a policy to address the immediate medication needs of inmates with serious medical conditions creates a risk that is sufficiently obvious as to constitute deliberate indifference to those inmates' medical needs." 318 F.3d at 585 (3d Cir. 2003). Mr. Martinez cites this case for the proposition that "[a]n act of an employee when in the position of a policymaker may be the basis for municipal liability." Dkt. #35 at 8.

There are some obvious problems with Mr. Martinez's reliance on *Natale*. First, it is not binding on this Court. Second, the facts are easily distinguishable. In *Natale*, the basis for imposing municipal liability was the complete absence of a relevant policy for a "glaring" and "obvious" problem—what to do with detainees who require prompt medical attention. *See also Waller v. City & County of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) ("The fact-finder can sometimes infer a municipality's conscious decision not to act when inaction would render a constitutional violation 'highly predictable' or 'plainly

9

obvious.'" (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307–08 (10th Cir. 1998)). In this case, on the other hand, Adams County had policies regarding the use of canines in police work. The written policy appears reasonable, and the law does not require it to contain every possible issue a law enforcement officer may face in the course of his day. The fact that there was no policy regarding whether to place a canine on the roof of a building where a suspect is located cannot form the basis of municipal liability.

What's more, there is no causal connection between the adequacy (or inadequacy) of Adams County's canine policies and Mr. Martinez's injuries. Mr. Martinez was not bitten by the dog handled by Defendant Cook. He did not jump off the roof because he feared the dog. In fact, it is undisputed that the dog refused Defendant Cook's command to bite Mr. Martinez. Instead, Mr. Martinez was injured because Defendant Cook allegedly kicked him off the roof. Thus, even if Adams County had a policy that expressly permitted the use of canine apprehension on sloped-roofed buildings, that policy could not be said to have been the motivating factor of Mr. Martinez's injuries.

I likewise reject Mr. Martinez's argument that Adams County is liable because it condoned Defendant Cook's actions by giving him passing performance reviews and failing to discipline him after the incident. It is true that municipal liability may flow from a final policymaking official's adoption of a subordinate's conduct. *See Melton v. City of Oklahoma City*, 879 F.2d 706, 724-25 (10th Cir. 1989). However, the Tenth Circuit stated in *Butler v. City of Norman* that it "cannot hold that the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*." 992 F.2d 1053, 1056 (10th Cir. 1993) (quoting *Santiago v. Fenton*, 891

F.2d 373, 382 (1st Cir.1989)). Because "an isolated incident even coupled with a failure to discipline is inadequate to support a finding of an affirmative link" between the actions of Defendant Cook and on the one hand, and a final policymaker for Adams County (i.e., the Sheriff) on the other, I conclude that the evidence, even when seen in the light most favorable to Mr. Martinez, does not establish municipal liability on the part of Adams County. *Butler*, 992 F.2d at 1056. *See also Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980) ("a policy cannot be inferred from the failure of those in charge to discipline a single police officer for a single incident of illegality . . . absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy could not ordinarily be inferred from a single incident of illegality such as a first arrest without probable cause or with excessive use of force").

Finally, although he does not discuss them in any detail in his Response, Mr. Martinez's Complaint lists five use of force incidents that he argues demonstrate that Adams County has a pattern of escalation. However, none of these incidents involve Defendant Cook or a factual scenario similar to the one at issue here. Furthermore, as Defendant points out, there is no indication that any determination of wrongdoing was ultimately found in any of the listed cases. An unconstitutional policy cannot be inferred from these disparate episodes.

## IV. ORDER

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. #32) is **GRANTED**, and that judgment is entered in favor of Defendant Adams County Sheriff's Office and against Plaintiff Alejandro Martinez. Mr. Martinez's claim against Defendant James Michael Cook remains in this lawsuit.

Dated:   June 9, 2020
         Denver, Colorado

*N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge

12